UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                               Case No. 14-20009

Terry Alan Jones,                 Honorable Sean F. Cox

    Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

In this action, Defendant Terry Jones ("Defendant") is charged with being a felon in possession of a firearm. On February 20, 2014, Defendant filed a Motion to Suppress Evidence (Doc. #16). The Court held an evidentiary hearing, and heard oral argument on Defendant's motion, on Wednesday, March 26, 2014. For the reasons set forth below, this Court shall DENY Defendant's Motion to Suppress Evidence.

**BACKGROUND**

Defendant was indicted in this action on January 9, 2014. (Doc. #8). The Indictment charges him with one count of being a Felon in Possession of a Firearm(s) in violation of 18 U.S.C. section 922(g)(1).[1]

These charges follow the arrest of Defendant, and subsequent search and seizure of evidence, at the residence of Defendant's girlfriend, Latonya Sankey, in Ypsilanti Township, Michigan.

---

[1] The Indictment also contains forfeiture allegations.

1

**Defendant's Motion To Suppress Evidence**

On February 20, 2014, Defendant filed a Motion to Suppress Evidence. (Doc. #16). In the motion, Defendant asks the Court to suppress evidence of firearms that were seized from Sankey's residence on November 8, 2013.

Defendant contends that the evidence should be suppressed because: 1) the Officers' initial entrance into the home was unreasonable, which makes all subsequent searches and seizures unreasonable; 2) Sankey's alleged consent to the Officers to search the home is not valid; and 3) the Officers had no basis to conduct a protective sweep or any other warrantless search of the home.

The Government's position is that Defendant's motion should be denied because: 1) the Officers had the right to enter the home to arrest the Defendant when they saw him; 2) the protective sweep was appropriate to ensure Officer safety; and 3) Sankey gave the Officers voluntary consent to search her home.

**Evidentiary Hearing**

With the issues so framed by the parties, this Court held an evidentiary hearing, and heard oral argument, on March 26, 2014. The Government presented four witnesses at the hearing: 1) Ypsilanti Police Officer Thomas Eberts; 2) Ypsilanti Police Detective Joseph Yuhas; 3) Ypsilanti Police Officer Anthony Schembri; and 4) Latonya Sankey.

The Government also submitted into evidence Government's Exhibit 1: City of Ypsilanti Police Department Affidavit for Consent Search form, signed by Latonya Sankey and dated November 8, 2013.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Having observed the evidence and the witnesses who testified at the evidentiary hearing,

allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

On November 8, 2013, Ypsilanti Police Department Officer Thomas Eberts ("Eberts")sought out Defendant because he wanted to talk with Defendant about a recent homicide that had taken place in Ypsilanti, Michigan. To that end, Officer Eberts inputted Defendant's name into the Law Enforcement Information Network ("LEIN") and he discovered that Defendant had six outstanding civil and felony arrest warrants.

Officer Eberts made contact with Defendant's mother, who informed him that Defendant was living with his girlfriend, Latonya Sankey ("Sankey"). Officer Eberts, who was familiar with Sankey, obtained her home address. Sankey's home, located at 1639 Smith Street, Ypsilanti Township, Michigan, 48198, is a small three-bedroom ranch-style home of approximately one-thousand (1000) square feet.

On the afternoon of November 8, 2013, Officer Eberts and Ypsilanti Police Detective Joseph Yuhas ("Yuhas") drove to Sankey's home. They were by accompanied by Ypsilanti Police Officer Anthony Schembri ("Schembri"), and Ypsilanti Police Officer Harrison ("Harrison"), who traveled in a separate, marked police vehicle.

When the Officers arrived at Sankey's home, Eberts and Yuhas knocked on the front door. Officers Schembri and Harrison proceeded to the rear of the home. Sankey answered the door after

---

[2] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

a few knocks. Officer Eberts indicated to Officers Schembri and Harrison that he had "made contact in the front."

Officer Eberts then asked Sankey if the Defendant was present in the home. Sankey informed Officer Eberts that the Defendant was, in fact, inside the home. As Officer Eberts and Detective Yuhas were talking with Sankey at the front door, they saw Defendant walk into the living area of the home and toward the front door. Eberts and Yuhas immediately stepped into the living room area of Sankey's home and arrested Defendant without incident. Sankey and her two young children were present in the living room when Defendant was placed under arrest.

While Defendant was still in the living room of the Sankey's home, Detective Yuhas and Officer Schembri started to conduct a protective sweep of the first floor of Sankey's home. Defendant was placed in the police vehicle, under the supervision of Officer Harrison, shortly after Schembri and Yuhas began their protective sweep.

In one of the bedrooms, Officer Schembri observed an assault rifle, in plain view, laying on a closet shelf. The bedroom closet door was open when Officer Schembri entered the room. Officer Schembri returned to the living room area of Sankey's home and informed Detective Yuhas that he saw a rifle in an open closet during the protective sweep.

Detective Yuhas asked Sankey for consent to search her home. Sankey told Detective Yuhas that she would consent to the search. Sankey testified that Detective Yuhas then presented her with an Affidavit to Consent Search:

> Q: Did they present you with a form to sign?
> A: Yes.
> Q: And it's in front of you on the table there is what we have marked as Exhibit Number One. Do you recognize this form?
> A: Yes.
> Q: Is that your printed name that appears on the top of that form?

      A:       Yes.
      Q:       Is that your signature which appears near the bottom of the form?
      A:       Yes.
      Q:       It's also signed by Detective Yuhas and he produced that, correct?
      A:       Yes.
      Q:       And they were all present when you signed this form?
      A:       Well . . . Yuhas was.
      Q:       You signed voluntarily?
      A:       Yes.
   . . .
      Q:       Nobody forced you to sign the form?
      A:       Correct.
   . . .
      Q:       Okay. Did you feel like you were free not to sign the form?
      A:       Yes.

(Hearing Trans., 3/26/14; *see also* Affidavit to Consent Search form, Gvmt. Ex. 1). Sankey knew that she was free to refuse Detective Yuhas's request for consent to search her home.

Detective Yuhas and Officer Eberts searched Sankey's home after they obtained her consent. Detective Yuhas retrieved the rifle that was seen in the bedroom closet, as well as a .32 caliber handgun that was located in the closet near Defendant's wallet.

## ANALYSIS & CONCLUSIONS OF LAW

"The Fourth Amendment bars unreasonable searches and seizures by the government." *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir. 2007), *citing* U.S. Const. amend. IV. Evidence seized in violation of an individual's Fourth Amendment rights is not admissible against him at trial. *U.S. v. Grant*, 920 F.2d 376, 389 (6th Cir. 1990), *citing Wong Sun v. U.S.*, 371 U.S. 471, 486 (1963). Plaintiff has the burden of proving that the violation of one of his constitutional or statutory rights justifies the suppression of the evidence at issue. *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

Warrantless searches and seizures inside a home are presumptively unreasonable. *Payton*

*v. New York*, 445 U.S. 573, 587 (1980). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 182 (1990) (internal citations omitted).

    **A)    Detective Yuhas's and Officer Eberts's Initial Entrance Into Sankey's Home Was Reasonable.**

Defendant argues that the Officers "immediately entered the Smith Street home without justification and only an arrest warrant." Defendant claims that because the Officers initially entered the premises unlawfully, all subsequent searches and seizures are unlawful.

The Government responds that the Officers' entry into the premises was reasonable to effectuate the valid arrest warrant(s) because they saw that Jones was present in the home.

The Government is correct in its assertion. "An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). It is undisputed that the Officers saw Defendant in the home just before they entered. It is also undisputed that, when Officer Eberts and Detective Yuhas entered Sankey's home, there were several valid warrants issued for Defendant's arrest. Therefore, this Court finds that the Officers were justified in entering Sankey's home for the purpose of effectuating a valid arrest warrant for Defendant.

    **B)    The Officers Had A Valid Basis To Conduct A Protective Sweep After Defendant Was Arrested.**

Defendant claims that the Officers' "protective sweep" of Sankey's home was unlawful because the Officers had no reasonable basis to believe that there were other individuals in Sankey's

home that could pose a threat to the Officers' safety. The Government disagrees, and maintains that the Officers "had the authority to conduct a protective sweep of the premises, for officer safety." (Gvmt. Resp. at 10).

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

"The Supreme Court has identified two types of warrantless protective sweeps of a residence that are constitutionally permissible immediately following an arrest." *U.S. v. Archibald*, 589 F.3d 289, 295 (6th Cir. 2009).

The first type permits an officer to, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334.

The second type of protective sweep permits an officer to search beyond immediately adjoining areas, provided that the officer can show that he or she "possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." *Id.* (internal citations and quotation marks omitted). Lack of information is not reason enough to justify a protective sweep. *U.S. v. Colbert*, 76 F.3d 773, 778 (6th Cir. 1996).

The Court finds that the protective sweep was justified. Officer Schembri and Detective Yuhas conducted a protective sweep of the areas immediately adjoining the room where Defendant

was arrested. The Officers did not search the basement or other more remote areas of Sankey's home. Therefore, the Officers need not show any reasonable suspicion to justify their search of the area. *See Buie*, 494 U.S. at 334. The Officers were permitted to perform a search of such limited scope to ensure their safety.

Further, the Officers did not exceed the permitted scope of their search. During a protective sweep, Officers are permitted to look in closets and other areas where a person may be hiding. *Id.* The Court finds that the door to the closet where the rifle was located was open when Officer Schemrbi entered. Moreover, Officer Schembri would have been justified in opening the closet door to see if any person was hiding behind it. Therefore, this Court finds that the Officers' protective sweep did not violate Defendant's Fourth Amendment rights.

### C) **Latonya Sankey Voluntarily Gave The Officers Consent To Search Her Home.**

Defendant argues that Sankey did not give the Officers valid consent to search her home because "a reasonable person in Ms. Sankey's shoes, given the circumstances—the aggressive show of force and forceable entry into the home—would not have felt free to decline the request to further search her home . . . ." (Def. Mo. at 7). Defendant further argues that Sankey "had little or no opportunity to consider a knowing and voluntary consent" to search her home because "the Officer's actions were so abrupt and, by their nature, so inherently coercive as to not be the product of voluntariness." (Def. Mo. at 6). Defendant claims that Sankey would not have felt free to decline the Officers' request to further search her home under the totality of the circumstances. (Def. Mo. at 7).

The Government has produced the Affidavit to Consent Search form signed by Latonya

8

Sankey on November 8, 2013.[3] (Gvmt. Ex. 1). The Government has the burden of proving that Ms. Sankey's consent was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "This burden entails proving by 'clear and positive' testimony that the consent was 'unequivocal, specific, intelligently given and not influenced by any duress or coercion.'" *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998) (internal citations omitted).

"Whether consent is voluntary is a question of fact determined from the totality of the circumstances." *U.S. v. Tatman*, 397 Fed. App'x 152, 164 (6th Cir. 2010), *quoting United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006).

> Relevant factors a court should consider when determining whether consent was voluntary include: (1) the age, intelligence, and education of the person consenting; (2) whether the person understands the right to refuse consent; (3) whether the person is advised of his or her constitutional rights; (4) the length and nature of any detention of the person coincident to the consent; (5) whether there is repeated and prolonged questioning or requests for consent; (6) the existence of any coercive or punishing conduct by police; and (7) whether there are indications of subtle coercion that may overcome a person's judgment.

*United States v. Jones*, 2007 WL 4224220 (S.D. Ohio Nov. 27, 2007), *citing United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998); *see also United States v. Jones*, 846 F.2d 358, 360 (6th Cir. 1988).

The Court finds that Sankey's consent was freely and voluntarily given. Ms. Sankey is an intelligent, well-spoken woman who is familiar with the legal system. Sankey testified that she gave her consent voluntarily, that she knew she was free to not sign the consent form, and that nobody

---

[3] There is no question that Sankey had the authority to consent to the Officers' search of her home. "It is well settled that valid consent may be given by a third party with common authority over the premises." *United States v. Hinojosa*, 606 F.3d 875, 881 (6th Cir. 2010), *citing United States v. Matlock,* 415 U.S. 164 (1974); *United States v. McCauley,* 548 F.3d 440, 446 (6th Cir. 2008).

forced her to sign the consent form. Furthermore, no evidence indicates that the Officers threatened Sankey or made any show of force during the encounter. Thus, there is no basis for this Court to find that Sankey's consent was the product of coercion or duress. Therefore, the Court shall reject Defendant's argument that the consent Sankey gave to the Officers to search her home was invalid.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Suppress Evidence (Doc. #16) is DENIED

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: April 7, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 7, 2014, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

10